UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 632 METACOM, INC. d/b/a HOMETOWN TAVERN, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. XSZ146282,<br><br>       Defendants. | No. 1:20-cv-03905-RA |

### MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITERS' MOTION TO TRANSFER VENUE

                Peter J. Fazio, Esq.
                AARONSON RAPPAPORT FEINSTEIN &
                DEUTSCH, LLP
                Attorneys for Defendant
                Certain Underwriters at Lloyd's, London
                Subscribing to Policy No. XSZ146282
                Office & P.O. Address
                600 Third Avenue
                New York, NY  10016
                212-593-6700

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................................................... ii
**I.   INTRODUCTION** ........................................................................................................... 1
**II.  FACTUAL BACKGROUND** ......................................................................................... 1
**III. ARGUMENT** .................................................................................................................... 3
   **A.   The Lawsuit Could Have Been Brought in the District of Rhode Island** ................. 3
   **B.   Transfer to the District of Rhode Island Better Serves the Convenience of Parties and Witnesses and the Interest of Justice** ........................................................................... 4
      1. Convenience of the Witnesses and Parties ................................................................ 5
      2. Locus of Operative Facts ........................................................................................... 6
      3. Forum's Familiarity with the Governing Law .......................................................... 8
      4. Plaintiff's Choice of Forum ....................................................................................... 9
      5. Availability of Process to Compel the Attendance of Unwilling Witnesses ............ 9
      6. Relative Means of the Parties .................................................................................. 10
      7. Location of Relevant Documents and Relative Ease of Access to Sources of Proof ........... 11
      8. Trial Efficiency and the Interest of Justice .............................................................. 11
**IV.  CONCLUSION** .............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Contra Transatlantic Reins Co.*, 2003 WL 22743829 ................................................................8
*Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) .......................5
*Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) ....................................10
*Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006) ..............................9, 11
*Hartford Cas. Ins. Co. v. A & M Assocs., Ltd.*, 200 F. Supp. 2d 84, 87 (D.R.I. 2002)..................8
*Hummingbird USA, Inc. v. Tex. Guar. Student Loan Corp.*, 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007) ...........................................................................................................................10
*In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006).................5
*In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).....................3, 6, 11
*Indian Harbor Ins. Co. v. NL Envtl. Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013)..........................................................................................................................11
*Praxair, Inc. v. Morrison Knudsen Corp.*, 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001) ....10
*Rindlfeisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010)....................9
*Salzman v. Travelers Home & Marine Ins. Co.*, Case No. 16-cv-04008, 2016 WL 3951206, at *2 (S.D.N.Y. July 20, 2016) ......................................................................................................4
*Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 435 (S.D.N.Y. 2018) ..........6
*Transatlantic Reins Co. v. Continental Ins. Co.*, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) ..........................................................................................................................................8
*Verri v. State Auto. Mut. Ins. Co.*, 583 F. Supp. 302, 305 (D.R.I. 1984).......................................4
*Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)...............8
*Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 180 (W.D.N.Y. 1997).3

**Statutes**

28 U.S.C. § 1332(d)(2)(C)..............................................................................................................4
Fed. R. Civ. Pro. 45(c)(1) ............................................................................................................10
R.I.G.L. § 9-5-33........................................................................................................................3, 4

**Other Authorities**

GOOGLE MAPS..........................................................................................................................6, 10
*See Foreign Travel Advice: USA*, GOV.UK ..................................................................................6

## I.  INTRODUCTION

Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. XSZ146282 ("Underwriters") move this Court to transfer this matter to the United States District Court for the District of Rhode Island (the "District of Rhode Island"), pursuant to 28 U.S.C. § 1404(a). The Plaintiff in this putative class action, a Rhode Island company, seeks insurance coverage under a commercial property policy for alleged loss of business income related to its business in Rhode Island. The subject insurance policy was issued to this Rhode Island-based company by a Massachusetts surplus lines agent. The sole nexus to the State of New York is that the policy provides that service of a complaint may be achieved on Underwriters' United States agent for service, who happens to be in New York. (*See* Ex. "A", Waiver of Service).

Plaintiff's filing in this Court is nothing more than transparent forum shopping. The critical mass of witnesses and evidence regarding its claim are located in Rhode Island. The Southern District of New York's connection with this dispute is nonexistent. Thus, this Court should transfer this action to the District of Rhode Island to better serve the convenience of parties and witnesses and in the interest of justice.

## II.  FACTUAL BACKGROUND

Underwriters are members of separate underwriting "syndicates" at Lloyd's, London, each of which are foreign insurers organized under the laws of the United Kingdom with their principal place of business in London, England. (Doc. 1, ¶ 25). Underwriters subscribed to Policy No. XSZ146282, issued to Plaintiff 632 Metacom, Inc. d/b/a Hometown Tavern ("Plaintiff"). That policy provides commercial property coverage for Plaintiff's property at 632 Metacom Avenue, Warren, Rhode Island 02885. (*See* Doc. 1-1) (the "Policy"). Plaintiff is a Rhode Island corporation

1

with its principal place of business in Rhode Island. (Doc. 1, ¶ 24). Further, it purchased the Policy in Rhode Island and Rhode Island surplus lines taxes were paid for the Policy. (*See* Doc. 1.1).

The relevant governmental orders were issued by the Governor of Rhode Island and were directed to businesses in Rhode Island. The orders sought to prevent the spread of the SARS-CoV-2 virus, and the disease it causes, COVID-19, in Rhode Island. (*See* Doc. 1, ¶¶ 13, 28-29). The orders required restaurants in Rhode Island, such as Plaintiff, to stop dine-in operations, although delivery and take-out services were permitted to continue. (*See id.* at ¶ 29). Plaintiff submitted an insurance claim for business interruption damages to Underwriters, which it alleges Underwriters either "denied . . .and/or requested information not required to evaluate the claim in order to effectuate delay and denial. (*See id.* at ¶ 59).[1]

On May 19, 2020, Plaintiff filed the Complaint here (the "Lawsuit"). In the Lawsuit, Plaintiff seeks insurance coverage on its own behalf and on behalf of all others "similarly situated," which Plaintiff broadly defines expansively with two "nationwide" class definitions, as well as a Rhode Island subclass. (*Id.* at ¶ 60). The Lawsuit asserts four counts of breach of contract under four different provisions of the Policy and four declaratory judgment counts under those same policy provisions. (*Id.* at ¶¶ 70–125). The Lawsuit alleges that Underwriters breached these provisions and seeks a declaration that Plaintiff and other class members' losses under these provisions are insured under their policies. (*Id.*). Beyond the reference to Underwriters' agent for service, a demonstrative executive order issued by the City of New York (that does not apply to Plaintiff), and a reference to the New York Times, there are no factual allegations related to the State of New York in the Complaint. (*Id.* at ¶¶ 10, 25, 43).

---

[1] For the purposes of this Motion to Transfer, Underwriters do not address the veracity of Plaintiff's allegations, the merits of the Lawsuit, nor whether Plaintiff is an appropriate class representative. Underwriters specifically reserve any and all arguments or defenses to these issues.

## III. <u>ARGUMENT</u>

The District of Rhode Island is by far the most appropriate venue for this Lawsuit. Under 28 U.S.C. §1404(a), a district court may, "[f]or the convenience of parties and witnesses . . . transfer any civil action to any other district or division where it may have been brought." "The inquiry on a motion to transfer is two-fold." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998). First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. And, second the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," transfer is appropriate. *Id.* (*citing Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 180 (W.D.N.Y. 1997)). In making the second determination, courts consider several factors, such as:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Id.* Here, the Lawsuit could, and should, have been brought in the District of Rhode Island. The balance of the above-referenced factors strongly favor transfer to that venue at this time. Accordingly, the Court should grant Underwriters' Motion to Transfer.

### A.   The Lawsuit Could Have Been Brought in the District of Rhode Island

As a threshold issue, the Lawsuit undoubtedly could have been brought in the District of Rhode Island. The District of Rhode Island would have personal jurisdiction over Underwriters pursuant to R.I.G.L. § 9-5-33, Rhode Island's long-arm statute, which "goes to the federal constitutional limit in holding foreign corporations amendable to suit in Rhode Island," by virtue of the Policy having been issued in Rhode Island and its cover of a Rhode Island risk. *See Verri v.*

*State Auto. Mut. Ins. Co.*, 583 F. Supp. 302, 305 (D.R.I. 1984) (*citing* R.I.G.L. § 9-5-33) (holding that the court had jurisdiction over a foreign insurer in part because the locus of the incident and the risk was "within the geographic area in which the insurance company agreed to insure the [risk]"). Moreover, the Policy contains a service of suit clause, which states in part: "Underwriters, at the request of the insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States." (*See* Doc. 1-1, p. 20). Further, Plaintiff is a Rhode Island corporation with its principle place of business located in Rhode Island.

As the Lawsuit is a putative class action where the matter in controversy exceeds the sum or value of $5,000,000, Plaintiff is a citizen of Rhode Island and Underwriters include at least one member who is a subject of a foreign state, the District of Rhode Island would have subject matter jurisdiction over the Lawsuit. *See* 28 U.S.C. § 1332(d)(2)(C) (providing that district courts shall have original jurisdiction over civil class actions so long as the amount in controversy is met and "any member of a class of plaintiffs is a citizen of a State and any defendant is a . . . citizen or subject of a foreign state"). Finally, as foreign insurers, venue for suit against Underwriters is proper in any judicial district. *See* 28 U.S.C. § 1391(c)(3). Thus, the Lawsuit could have been properly brought in the District of Rhode Island.

    **B.**    **Transfer to the District of Rhode Island Better Serves the Convenience of Parties and Witnesses and the Interest of Justice**

Having established that the Lawsuit could have been brought in the District of Rhode Island, this Court should weigh whether transfer to that venue better serves the convenience of the parties and witnesses, as well as the interest of justice. As shown below, each of the nine previously cited factors support a transfer of this Lawsuit because, although Plaintiff chose this Court as a forum, "no operative fact connects this controversy to this state." *Salzman v. Travelers Home & Marine Ins. Co.*, Case No. 16-cv-04008, 2016 WL 3951206, at *2 (S.D.N.Y. July 20, 2016).

4

Meanwhile, Rhode Island has multiple meaningful ties to the dispute sufficient to warrant a transfer to that district.

### 1. Convenience of the Witnesses and Parties

The first two factors are discussed here together, as Rhode Island is the home of both Plaintiff and a critical mass of identifiable potential witnesses. The convenience of witnesses is generally considered one of the most important factors when determining whether to transfer an action. *See In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). To show that this factor favors transfer, the moving party must "identify the witnesses located in the transferee district upon whom it intends to rely and describe the contents of their potential testimony." *Id.*

With the exception of Underwriters and the surplus lines agent, every identifiable witness is located in Rhode Island. (*See* Ex. "B," Affirmation of Peter J. Fazio). Plaintiff, whose testimony regarding the basis for its claim would be crucial to Underwriters' defense, is located in Rhode Island. Plaintiff's employees, who worked in its Rhode Island restaurant, presumably live in Rhode Island. Further, the surplus lines agent is located in Quincy, Massachusetts, which is much closer to Rhode Island than Southern New York. Therefore, the identifiable third-party witnesses who could give potentially relevant testimony concerning the claim and the Policy are also located in or near Rhode Island. Even if Plaintiff was to speculate concerning some tangential witness in the Southern District of New York,[2] the critical mass of relevant witnesses are located in Rhode Island, which supports transfer. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 396.

---

[2] Of course, the agent for service in New York, who merely accepts service, would have no relevant evidence. Furthermore, because Underwriters anticipate that Plaintiff may raise this argument in response to this Motion, Underwriters note that the Policy's Service of Suit Clause does not mean that Underwriters waived the right to seek to have this action transferred. *See Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) ("[T]he Service of Suit Clause is not a 'choice of forum' provision, and does not prescribe the forum for the action, but instead entails no more than Lloyd's voluntary submission to the jurisdiction of the United States.") (internal quotations omitted); *see also Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996) (noting that

The convenience of the parties also points to Rhode Island. Plaintiff is a Rhode Island corporation with its principal places of business in Rhode Island. Therefore, shifting the Lawsuit to the District of Rhode Island makes this litigation far more convenient for Plaintiff.[3] With respect to the putative uncertified alleged class, "any plaintiffs not residing in New York would be required to travel irrespective of whether the trial is held in [Rhode Island] or New York." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998). Rhode Island is similarly no less convenient for Underwriters, whose witnesses must cross the Atlantic regardless of whether the Lawsuit is in Rhode Island or New York.[4] Thus, transfer to the District of Rhode Island serves the convenience of both the parties and the witnesses.

### 2. Locus of Operative Facts

When determining the locus of operative facts in insurance coverage disputes, the locus in question is "the site of the execution of the contract." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 435 (S.D.N.Y. 2018). "Courts have also emphasized the site of negotiations, purchase, and delivery of the policy in question when assessing the locus of operative facts in insurance coverage disputes." *Id.* at 436.

---

a Service of Suit Clause "does not bind the parties to litigate in a particular forum, or give the insured the exclusive right to choose a forum unrelated to the dispute").

[3] A quick review of Google Map directions demonstrate that Plaintiff need only drive approximately twenty minutes from the Property to the District of Rhode Island. GOOGLE MAPS, (last accessed July 28, 2020), https://www.google.com/maps/dir/632+Metacom+Avenue,+Warren,+RI/United+States+District+Court+for+the+District+of+Rhode+Island,+1+Exchange+Terrace,+Providence,+RI+02903/@41.7721075,-71.3393819,12z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x89e456bf6b1f14c5:0x853be40b34521d3a!2m2!1d-71.2679904!2d41.7174345!1m5!1m1!1s0x89e44516e6015205:0x8dbd4b6e91e2e23c!2m2!1d-71.4103989!2d41.8257689!3e0. Conversely, the drive to the Southern District of New York would take over three hours. GOOGLE MAPS (last accessed July 28, 2020), https://www.google.com/maps/dir/632+Metacom+Avenue,+Warren,+RI/Southern+District+of+New+York,+Pearl+Street,+New+York,+NY/@41.4608159,-72.6298591,8z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x89e456bf6b1f14c5:0x853be40b34521d3a!2m2!1d-71.2679904!2d41.7174345!1m5!1m1!1s0x89c25a215413b769:0x84af2ab2231c8464!2m2!1d-74.0009179!2d40.7134289!3e0.

[4] That is assuming that Underwriters' witnesses are able to physically travel to the United States at all, given that travel from the UK to the US is currently severely restricted. *See Foreign Travel Advice: USA*, GOV.UK (last accessed July 28, 2020), https://www.gov.uk/foreign-travel-advice/usa/coronavirus.

6

Underwriters' headquarters are located in London, hence, their location carries no weight in the application of this factor. Plaintiff purchased the Policy in Rhode Island, through XS Brokers Insurance Agency, Inc., in Massachusetts. (*See* Doc. 1-1, p. 8). Plaintiff's Complaint cites the relevant governmental orders, which were all issued in Rhode Island by Rhode Island state officials:

> 29.    On March 16, 2020, the State of Rhode Island issued Executive Order 20-04, the "Second Supplemental Emergency Declaration – Restaurants, Bars, Entertainment Venues, And Public Gatherings." The order states that beginning on March 17, 2020, "[a]ny restaurant, bar or establishment that offers food or drink shall not permit on premises consumption of food or drink," and that "[g]atherings of 25 people or more are prohibited in Rhode Island," including without limitation, "community, civic, public, leisure, or faith-based events, sporting events with spectators concerts, conventions, fundraisers, parades, fairs, festivals, and any other similar activity that brings together 25 or more people at the same time." On March 28, 2020, Rhode Island issued Executive Order 20-14, the "Amended Eleventh Supplemental Emergency Declaration – Staying at Home, Reducing Gatherings, Certain Retail Business Closures and Further Quarantine Provisions," which required that all Rhode Island residents stay at home except for certain specific exempted activities, and prohibited "[a]ll gatherings of more than five 95) people in any public or private space . . . ." On March 30, 2020, Rhode Island extended Executive Order 20-04 through April 13, 2020. And, on April 10, 2020, Rhode Island extended Executive Order 20-04 and Executive Order 10-14 through May 8, 2020.

(Doc. 1, ¶ 29). Further, Plaintiff admits that to establish civil authority coverage, it will demonstrate that "[a]ccess to its premises has been restricted due to the presence and threat of COVID-19 in the immediate surrounding areas." (*Id.* at 55). Plaintiff's Property is, of course, in Rhode Island, not New York. (*Id.* at ¶ 24).

Therefore, the discernible locus of operative facts surrounding the interpretation of the Policy and the governmental orders, which is the core of this dispute, is found in Rhode Island, further supporting transfer to the District of Rhode Island.

### 3. Forum's Familiarity with the Governing Law

Whether the Lawsuit were adjudicated in Rhode Island or New York, Rhode Island law governs the interpretation of the Policy. *See Hartford Cas. Ins. Co. v. A & M Assocs., Ltd.*, 200 F. Supp. 2d 84, 87 (D.R.I. 2002) (applying Rhode Island's "interest-weighing approach" to determine that a policy was governed by the state where the insured was located); *Transatlantic Reins Co. v. Continental Ins. Co.*, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) (stating the factors that New York courts look to when determining which state's law apply to insurance contracts, including location of the risk, policyholder's principal place of business, and where the policy was delivered, among others). Normally, a case should be "tried in a forum at home with the governing law." *Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). This factor is given greater weight when the governing law is shown to be unclear, unsettled or difficult. *Contra Transatlantic Reins Co.*, 2003 WL 22743829, at *6.

Here, Underwriters believe Rhode Island law is relatively settled on some, but not all, the issues before the Court. Even where legal authority exists, Plaintiff undoubtedly will try to distinguish existing case law on the basis that COVID-19 differs from the contaminants and viruses at issue in prior cases. Specifically, Plaintiff's Complaint asks the Court to decide, among other issues: whether COVID-19 is capable of causing "direct physical loss" under the Policy and whether the subject government orders triggered the Policy's "civil authority" coverage. (*See* Doc. 1, ¶¶ 54-55, 73, 87). These issues are in addition to potential coverage defenses Underwriters may assert under the Policy, such as the applicability of the Policy's contamination exclusions. (*See* Doc. 1-1, pp. 13-14, 66). These are complex issues and the interpretation of the Policy's language under Rhode Island law is best left to a Rhode Island court.

### 4. Plaintiff's Choice of Forum

Plaintiff's choice of forum should be given absolutely no weight, as the decision to bring the Lawsuit before this Court is unabashed forum shopping. While a court generally should defer to a plaintiff's choice of forum, "[t]his maxim bears little weight . . . in a putative class action involving plaintiffs who are scattered throughout the country." *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006). Even less consideration should be given to a plaintiff's forum selection when "(1) the operative facts have little or no connection with the forum chosen by a plaintiff, or (2) a plaintiff chooses a forum that is not his or her residence." *Rindlfeisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010) (internal quotations omitted). When a plaintiff seeks to try a case in a forum that has "little or no connection with the parties or the subject matter, a plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992).

The vast majority of operative facts and a critical mass of relevant identifiable witness are connected to or are located in Rhode Island, where Plaintiff resides and where its business is located. New York has no connection to this controversy, which shows that Plaintiff's choice to file the Lawsuit with this Court was transparent forum shopping. Accordingly, Plaintiff's choice of forum should be given no weight at all, and this Court should transfer the Lawsuit to an appropriate venue: the District of Rhode Island.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor also weighs in favor of transfer to the District of Rhode Island. Generally, the availability of process to compel the attendance of unwilling witnesses is "relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Praxair, Inc. v. Morrison*

9

*Knudsen Corp.*, 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001). To the extent that it is necessary to compel the attendance of any unwilling witnesses, all relevant identifiable witnesses are located in Rhode Island, Massachusetts or the United Kingdom. (*See* Ex. B). The federal courts' subpoena power has a limited geographic scope; specifically, it only reaches persons who reside, are employed, or regularly transact business within 100 miles of the court, for purposes of trials or hearings. *See* Fed. R. Civ. Pro. 45(c)(1). Any witnesses in Rhode Island, which, as established, include the critical mass of identifiable key witnesses in this action, would be outside of this Court's subpoena power. By contrast, the District of Rhode Island would be more than capable of compelling the attendance of such unwilling witnesses.[5]

### 6. Relative Means of the Parties

Here, Underwriters likely have greater financial resources than Plaintiff—but this does not mean this factor weighs in Plaintiff's favor. *See Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) (noting that even though defendants had greater resources than plaintiff, plaintiff did not demonstrate how pursuing action in different venue would increase its expended costs, and thus the factor was given little weight); *see also Hummingbird USA, Inc. v. Tex. Guar. Student Loan Corp.*, 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007) (stating that when both parties are corporations, "this factor is entitled to little weight"). In fact, transfer to Rhode Island would allow Plaintiff to make better use of its means, as litigating closer to its principal place of business should allow greater conservation of its financial resources than litigating out-of-state, in

---

[5] In fact, the District of Rhode Island would also be able to compel the attendance of the Massachusetts' surplus lines agent, given that the agent's office is within 100 miles of the District of Rhode Island. *See* GOOGLE MAPS (last accessed July 28, 2020),
https://www.google.com/maps/dir/13+Temple+Street,+Quincy,+MA/United+States+District+Court+for+the+District+of+Rhode+Island,+Exchange+Terrace,+Providence,+RI/@42.0381639,-71.2413671,10z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x89e37cb4cd1c9359:0xa73e5cf0f9e52231!2m2!1d-71.0023704!2d42.2507374!1m5!1m1!1s0x89e44516e6015205:0x8dbd4b6e91e2e23c!2m2!1d-71.4103989!2d41.8257689!3e0.

10

New York. Meanwhile, litigating in Rhode Island or New York has no substantial effect on the cost Underwriters must expend to litigate this dispute. Accordingly, this factor weighs in favor of transfer or, alternatively, should be given no weight at all.

### 7. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

This factor should not weigh heavily into the Court's analysis. Yet, its application still supports transfer to the District of Rhode Island. Any relevant documents in Underwriters' possession are located in the United Kingdom. (Doc. 1-1, p. 8). Documents in Plaintiff's possession, as well as any sources of proof, such as evidence at the Property, would be located in Rhode Island. Any documents related to the governmental orders at issue would also be located in Rhode Island. Thus, this factor supports transfer to the District of Rhode Island.

### 8. Trial Efficiency and the Interest of Justice

As displayed by application of all of the above factors, the interests of justice favor transfer of this case to the District of Rhode Island. This Court has the discretion "to transfer an action to where the trial would be best expedient and just." *See In re Nematron Cop. Sec. Litig.*, 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998). "The relevant docket conditions of the transferor and transferee courts . . . are relevant" to such a determination. *Indian Harbor Ins. Co. v. NL Envtl. Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013).

The Southern District of New York has no tangible connection to this controversy. Therefore, the discovery and trial processes would be more conveniently and quickly conducted in the District of Rhode Island. *See, e.g.*, *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) (noting that the trial would be efficiently conducted in the district where the majority of relevant documents were located). Otherwise the parties would be required to conduct discovery almost entirely in Rhode Island and then litigate the case in Southern New York, which

11

is a needless inefficiency. As a result, the case could be more expeditiously resolved in Rhode Island.

## IV.  CONCLUSION

For the foregoing reasons, this action should be transferred to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a), which is a more appropriate venue for this action to procced and where it should have been brought originally.

Respectfully submitted this 28th day of July, 2020.

*Peter J. Fazio*

BY:  Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN &
DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy No. XSZ146282
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

To: All Parties VIA ECF

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2020, the foregoing Memorandum of Law in Support of the Motion to Transfer was electronically filed with the Clerk of Court, United States District Court for the Southern District of New York and said Memorandum of Law shall be deemed served by electronic notification of the Court's CM/ECF system as copy was served via e-mail upon the following:

Darren T. Kaplan
**KAPLAN GORE LLP**
1359 Broadway
Suite 2001
New York, New York 10018

John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
**MILLER SCHIRGER LLC**
4520 Main Street
Suite 1570
Kansas City, Missouri 64111

Patrick J. Stueve
Bradley T. Wilders
Curtis Shank
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road
Suite 200
Kansas City, Missouri 64112

J. Kent Emison
**LANGDON & EMISON LLC**
911 Main Street
Lexington, Missouri 64067
Houston, Texas 77064

Richard F. Lombardo
Dawn M. Parsons
**SHAFFER LOMBARDO SHURIN, P.C.**
2001 Wynadotte Street
Kansas City, Missouri 64108

13