# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

632 METACOM, INC. d/b/a HOMETOWN TAVERN, individually and on behalf of all others similarly situated,

                  Plaintiffs,

        v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. XSZ146282,

                  Defendants.

No. 1:20-cv-03905-RA

## UNDERWRITERS' MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITERS' MOTION TO DISMISS THE COMPLAINT

Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN & DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy No. XSZ146282
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

**Table Of Contents**

TABLE OF AUTHORITIES ................................................................................... ii

I.   INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ....................................................................... 1

  A.   THE POLICY ........................................................................................ 1

  B.   BTHE INSURANCE CLAIM ................................................................ 4

III.   LEGAL STANDARD ................................................................................ 5

IV.   ARGUMENT ............................................................................................. 7

  A.   RHODE ISLAND LAW GOVERNS THE INTERPRETATION OF THE POLICY .7

  B.   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY COVERED BY THE POLICY ....................................... 8

  C.   PLAINTIFF FAILS TO PLEAD A VALID "CIVIL AUTHORITY" CLAIM ......... 12

  D.   COVERAGE IS BARRED BY THE BIOLOGICAL EXCLUSION .......................... 16

  E.   COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION .............. 18

  F.   COUNTS II, IV, VI, AND VII FAIL TO ALLEGE VALID BREACH OF CONTRACT CLAIMS ....................................................................... 21

  V.   CONCLUSION ......................................................................................... 22

# **TABLE OF AUTHORITIES**

**Cases**

*54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) ...14

*Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.,* 321 F. Supp. 2d 209, 220 (D. Mass. 2004) ..................................................................................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)......................................................................6, 9, 21

*Bahama Bay II Condo. Ass'n, Inc v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1278 (M.D. Fla. 2019)..................................................................................................................................12

*Barkan v. Dunkin Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010)....................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .........................................................6, 7, 9

*Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1083 (R.I. 2010) ...........................................................................................................................11, 19

*Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1084 (R.I. 2010) .................................................................................................................................17

*BMS Enters., Inc. v. Gen. Star Indem. Co.*, No. 14-cv-3375, 2015 WL 13650038, at *2 (S.D.N.Y. Mar. 11, 2015).............................................................................................................................7

*Borras-Borrero v. Corporacion del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) .................................................................................................................................................6

*Certain Underwriters at Lloyd's London v. Creagh*, No. 12-571, 2013 WL 3213345, at *3 (E.D. Pa. June 26, 2013) ...................................................................................................................19

*Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014).............................................................................................19

*Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019).................................................................................................................19, 20

*City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004)..................................................................................................................................16

*Corley v. Vance*, 365 F. Supp. 3d 407, 432 (S.D.N.Y. 2019) ......................................................5

*Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004)...................................................................................................................................9

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011)...................14

*Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194–95 (1st Cir. 1996).....................................................21

*Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011) .............................................................................................................................8

*Emp'rs Mut. Cas. Co. v. Pires*, 723 A.2d 295, 299 (R.I. 1999) ...........................................17, 18

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB at 20:5-9  (Mich. Cir. Ct. July 1, 2020)...................................................................................................................................10

*Gen. Acc. Ins. Co. of Am. v. Am. Nat. Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998).............8

*Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing*, 716 A.2d 751, 757 (R.I. 1998)...........12

*Grosso v. Biaggi*, 558 F. App'x 36, 36 (2d Cir. 2014).................................................................6

*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).........................................................................6

*Hueber v. McCune*, 589 F. App'x 9, 10 (2d Cir. 2014) .................................................................6

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)...................................17

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007).......................14

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ....................................................................................................................10

*Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013)................................................5

*Matter of Schnittger*, 431 F. Supp. 2d 109, 113 (E.D.N.Y. 2019).................................................17

*Me. Woods Pellet Co. v. W. World Ins. Co.*, No. 1:17-CV-00446-JCN, 2020 WL 3404728, at *4 (D. Me. June 19, 2020) ........................................................................................................12

*Mears v. Allstate Indem. Co.*, 336 F. Supp. 141, 146 (E.D.N.Y. 2018)...........................................9

*Med. Malpractice Joint Underwriting Ass'n of R.I. v. Charlesgate Nursing Ctr., L.P.*, 115 A.3d 998, 1002 (R.I. 2015)..............................................................................................................11

*Netwon Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) ........................16

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) .....................................................................................................................11

*Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) .......................21

*Papudesu v. Med. Malpractice Joint Underwriting Ass'n of R.I.*, 18 A.3d 495, 498 (R.I. 2011)..11

*Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005) .................................................21

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005).......................11

*Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co.*, 245 F. Supp. 2d 563, 579 (D.N.J. 2001) ......8

*Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002)...............10

*Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009)...................................................6

*Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 489 (5th Cir. 1960)........................................22

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) ..............................14

*Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) .......................................................................6

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir.2012)............................9

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)...................................6

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020) .....................................................................................................................................10

*St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. CIV.A. 297CV153BB, 1999 WL 33537191, at *2 (N.D. Miss. Nov. 4, 1999)..............................................................................8

*Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .....................................................................................................................................15

*Timber Pines Plaza*, 2016 WL 8943313, at *2.............................................................................21

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016).................................................................................................9

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) .......15

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) ...............10

*Zurich Ins. Co. v. Shearson Lehman Hutton*, 642 N.E.2d 1065, 1068 (N.Y. 1994)........................7

## Statutes

Fed. R. Civ. P. 8(a)(2) ...................................................................................................................6

**Other Authorities**

10A Couch on Ins. § 148:46 (3d. Ed. West 1998)......................................................................10

Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020) ...............................................17

*Biological Agents*, OSHA....................................................................................17

Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004) ("Viruses are microorganisms") ...........................................................20

*Pathogen*, MERRIAM-WEBSTER .........................................................................18

*Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA ......................................20

*Understanding Microbes in Sickness and in Health*, U.S. DEP'T OF HEALTH & HUMAN SERVS., NAT'L INST. OF HEALTH 47 (Jan. 2006) ...................................................20

Wendy Keenleyside, MICROBIOLOGY: CANADIAN EDITION, § 1.3 (June 23, 2019) ("Viruses are acellular microorganisms.") ...........................................................20

*What is a Microorganism?* NAT'L PARK SERV., U.S. DEP'T OF INTERIOR, 2 (April 2014) ...........20

I.     **INTRODUCTION**

Plaintiff in this putative class action, 632 Metacom, Inc. d/b/a Hometown Tavern ("Plaintiff"), seeks insurance coverage for business interruption related to the COVID-19 pandemic from Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. XSZ146282 ("Underwriters").

Plaintiff's Complaint must be dismissed for several reasons. First, in order for the policy's Business Income coverage to apply, there must be direct physical loss of or damage to the insured property. Plaintiff's Complaint fails to sufficiently allege that fundamental predicate, nor could it ever do so under the alleged circumstances. Similarly, Plaintiff fails to sufficiently allege that a civil authority prohibited access to insured property because of direct physical damage to nearby property, which are the requirements for "civil authority" coverage. Second, even if those policy requirements are properly alleged, the policy expressly excludes any losses caused directly or indirectly by, or related to "organic pathogens," which includes viruses such as novel Coronavirus, also known as SARS-CoV-2. Similarly, the policy excludes coverage for any claim arising directly or indirectly out of a microorganism. SARS-CoV-2 is unquestionably a microorganism. Lastly, the Complaint fails to sufficiently allege causes of action for breach of contract, or alleged breach of contract, as Plaintiff provides no supporting facts to support its claim. Accordingly, Underwriters' Motion to Dismiss should be granted.

II.    **FACTUAL BACKGROUND**

A.     **THE POLICY**

632 Metacom, Inc. owns and operates a restaurant named "Hometown Tavern" in Warren, Rhode Island. (Doc. 1, ¶ 2). Underwriters subscribed to Policy No. XSZ146282, which insures the

property on which the restaurant is located[1] (the "Property") for direct physical loss of or damage

to the Property, for the policy period of October 19, 2019, to October 19, 2020 (the "Policy").

(Exhibit A).[2]

The Policy's insuring clause provides:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the Premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, Exhibit A, Form CP 00 10 06 07, at p. 1 of 16). "Covered Cause of Loss" is defined in the

Policy as "Risks of Direct Physical Loss unless the loss is" excluded or limited. (Policy, Exhibit

A, Form CP 10 30 04 02, at p. 1 of 9).

While the Policy does provide coverage for loss of "Business Income," the loss must also

arise out of direct physical loss of or damage to the insured property as identified in the

"declarations" page of the Policy:

**1. Business Income**

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". ***The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations*** and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy, Exhibit A, Form CP 00 30 06 07, at p. 1 of 9) (emphasis added).

The Policy also provides coverage for "Extra Expense" which is defined as:

**2. Extra Expense**

\* \* \*

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no ***direct***

---

[1] The insured property is identified on the Declarations Page of the Policy.
[2] The Policy is attached to the Complaint and reattached here for the Court's convenience.

2

> ***physical loss or damage to property*** caused by or resulting from a Covered
> Cause of Loss.

(Policy, Exhibit A, Form CP 00 30 06 07, at p. 1 of 9) (emphasis added). As noted above,

"Business Income" and "Extra Expense" coverages are only provided during the "period of

restoration", which is defined as:

> … the period of time that:
> a.  Begins:
>     (1) 72 hours after the time of ***direct physical loss or damage*** for Business
>         Income Coverage; or
>     (2) Immediately after the time of ***direct physical loss or damage*** for Extra
>         Expense Coverage;
>     caused by or resulting from any Covered Cause of Loss at the described
>     premises; and
> b.  Ends on the earlier of:
>     (1) The date when the property at the described premises ***should be repaired,
>         rebuilt or replaced*** with reasonable speed and similar quality; or
>     (2) The date when business is resumed at a new permanent location.

(Policy, Exhibit A, Form CP 00 30 06 07, at p. 9 of 9) (emphasis added). Accordingly, business

income and extra expense coverage is provided only if the loss is caused by direct physical loss or

damage resulting from a covered cause of loss. Coverage is then provided only for that time needed

to repair, rebuild, or replace the damaged property.

The Policy provides "Civil Authority" coverage but, again consistent with the fundamental

principle of a property insurance policy, direct physical loss or damage to property is required as

the civil authority action must result from damage to property caused by a Covered Cause of Loss:

> **a.  Civil Authority**
>
> In this Additional Coverage—Civil Authority, the described premises are
> premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a ***Covered Cause of Loss causes damage to property other than property
> at the described premises***, we will pay for the actual loss of Business Income
> you sustain and necessary Extra Expense caused by ***action of civil authority
> that prohibits access to the described premises***, provided that both of the
> following apply:
>
> (1) Access to the area immediately surrounding the damaged property is

3

prohibited by civil authority *as a result of the damage*, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

(Policy, Exhibit A, Form CP 00 30 06 07, at p. 2 of 9). Thus, among the requirements to trigger civil authority coverage, damage to property must <u>prohibit</u> access to the Property.

The Policy contains applicable exclusions. Among those exclusions are an "organic pathogen" exclusion which excludes claims arising out of virus (Policy, Exhibit A, Form 2001 AML), and a microorganism exclusion (Policy, Form LMA 5018).

## B.     THE INSURANCE CLAIM

Plaintiff submitted a claim for business interruption as a result of Rhode Island state and local orders related to COVID-19 (the "Claim"). A short time later, Plaintiff filed this lawsuit. (Doc. 1). In the Complaint, Plaintiff alleges that "[a]s a result of the Rhode Island Stay at Home orders, [it] is no longer permitted to operate its business, which was completely shuttered from March 17 through April 30, 2020." (Doc. 1, ¶ 15). Plaintiff further alleges it has "suffered direct physical loss to its property in that Plaintiff's premises likely have been infected with COVID-19." (*Id.* at ¶ 15). Notably, however, the Complaint is devoid of any allegations that Plaintiff (or its employees) were prohibited from accessing the premises as a result of COVID-19 or any related governmental orders. Similarly, the Complaint fails to provide any description of the "direct physical loss and damage," but instead gives an incomplete recitation of these orders.

On March 16, 2020, Rhode Island Governor Gina M. Raimondo issued Executive Order

No. 20-04, which prohibited on premises-consumption of food or alcohol but allowed restaurants to continue take-out and delivery services. (Doc. 1, ¶ 29, Exhibit B, R.I. Executive Order No. 20-04).[3] On March 20, 2020, Governor Raimondo issued Executive Order No. 20-08, allowing restaurants to provide alcohol delivery with food purchases. (Exhibit C, R.I. Executive Order No. 20-08). On March 28, 2020, Governor Raimondo issued Executive Order No. 20-14, ordering individuals to stay home, reduce the size of gatherings, and closing non-critical businesses. (Doc. 1, ¶ 29; Exhibit D, R.I. Executive Order No. 20-14). Restaurants were permitted to continue operations for pickup, drive-through, and delivery services. (Exhibit D). Executive Orders 20-04 and 20-14 were subsequently extended. (Doc. 1, ¶ 29; Exhibit E, R.I. Executive Order 20-15; Exhibit F, R.I. Executive Order 20-23).

All these measures were put in place to promote social distancing and slow the spread of COVID-19 by minimizing contact between residents.[4] (Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Exhibit H). These orders were not issued as a result of any "direct physical loss of or damage" to property, as required under the Policy to trigger coverage. Moreover, the orders did not "prohibit access" to the Property, as Plaintiff, its employees, and customers were permitted to enter the Property for purposes of providing and obtaining delivery and take-out.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013); *Harris v.*

---

[3] The government orders are a matter of public record. When ruling on a motion to dismiss, this Court may consider matters of which judicial notice may be taken, including public records. *Corley v. Vance*, 365 F. Supp. 3d 407, 432 (S.D.N.Y. 2019).

[4] Although not mentioned in Plaintiff's Complaint, the Town of Warren issued several orders to promote social distancing and minimize the spread of COVID-19. On March 16, 2020, the town of Warren issued an Amended Declaration of Emergency directing restaurants to suspend on-premises consumption of food but allowed restaurants to continue to operate for take-out and delivery. (Exhibit G). On March 23, 2020, the Town of Warren issued an Amended Declaration of Emergency, which also allowed delivery of beer and wine with food purchases. (Exhibit H).

*Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," but must allege more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to accept the labels and legal conclusions in the complaint as true. *See Hueber v. McCune*, 589 F. App'x 9, 10 (2d Cir. 2014); *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016).

To survive a motion to dismiss, a complaint must contain facts that, when assumed to be true, sufficiently "state a claim to relief that is *plausible on its face*." *Iqbal*, 556 U.S. at 678 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Borras-Borrero v. Corporacion del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) (explaining that factual allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" will not suffice to prevent a motion to dismiss) (citations omitted); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009); *see also Grosso v. Biaggi*, 558 F. App'x 36, 36 (2d Cir. 2014).

Moreover, "when the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure

of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and quotations omitted).

IV.   <u>ARGUMENT</u>

    A.   **RHODE ISLAND LAW GOVERNS THE INTERPRETATION OF THE POLICY**

Despite Plaintiff's obvious forum shopping, Rhode Island law will govern the interpretation of the Policy.[5] When the laws of two states potentially apply to a contract, "New York employs a 'center of gravity' or 'grouping of contacts' approach to determine 'which state has the most significant relationship to the transaction and the parties.'" *BMS Enters., Inc. v. Gen. Star Indem. Co.*, No. 14-cv-3375, 2015 WL 13650038, at *2 (S.D.N.Y. Mar. 11, 2015) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton*, 642 N.E.2d 1065, 1068 (N.Y. 1994)). In the context of insurance policies, courts examine five factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter; and (5) the place where claims under the policy were handled. *Zurich*, 642 N.E.2d at 1068.

The Policy was contracted for in Rhode Island, where Plaintiff resides. (Policy, Exhibit A, Form SLC-1). The Policy was negotiated with Underwriters' surplus lines agent, XS Brokers Insurance Agency, Inc., whose office is located in Quincy, Massachusetts. (*Id.*). Rhode Island is where Plaintiff's principal place of business is located and the parties contemplated that performance under the Policy would take place there, as evident by the Rhode Island state stamp on the Policy. (*Id.*; Doc. 1, ¶ 24). Payment of covered claims, performance of the Policy, would occur in Rhode Island, where Plaintiff is located. The Property, which is the subject matter of the Policy, is located in Rhode Island. (Doc. 1, ¶ 2). Thus, it should be undisputed that Rhode Island

---

[5] Underwriters have contemporaneously filed a Motion to Transfer this action to the United States District Court for the District of Rhode Island, where it should have been brought originally.

is the state with the "most significant relationship to the transaction and the parties" and Rhode Island law will govern the interpretation of the Policy.

**B.     PLAINTIFF'S COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY COVERED BY THE POLICY**

The Policy provides coverage for business income and extra expense losses if such losses are the result of "direct physical loss of or damage to" the insured properties. (Policy, Exhibit A, Form CP 00 30 06 07, at p. 1 of 9). Further, business income coverage and extra expense are only provided during the "period of restoration," which is the time it takes to repair, rebuild or replace the Property. (Policy, Exhibit A, Form CP 00 30 06 07, at p. 9 of 9). Here, the Complaint contains no plausible allegations of direct physical loss of or damage to the Property, as evidenced by the failure to identify anything to repair, rebuild or replace at the Property.

Rhode Island law places the initial burden on an insured to establish that the loss is within the policy's coverage. *Gen. Acc. Ins. Co. of Am. v. Am. Nat. Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998). Furthermore, "the requirement that the damage or loss be physical is central to the nature of coverage under a first-party all risks policy." *Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co.*, 245 F. Supp. 2d 563, 579 (D.N.J. 2001), *aff'd*, 311 F.3d 226 (3d Cir. 2002). Plaintiff, as the party claiming a covered loss occurred, "must demonstrate that the property was physically damaged in order to trigger coverage." *Id.*

Accordingly, to recover for business income loss, Plaintiff must plead and then prove that it sustained damage to property that is insured by the Policy, that the damage was caused by a covered cause of loss, and that there was an interruption to its business caused by the property damage. *Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011); *see also St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. CIV.A. 297CV153BB, 1999 WL 33537191, at *2 (N.D. Miss. Nov. 4, 1999) ("[I]t is clear that in order

8

for the actual loss of earnings and extra expenses or business income to be reimbursed, there must be a direct physical loss or damage to property at the insured location."). Plaintiff merely alleges that it "has suffered direct physical loss to its property in that Plaintiff's premises likely have been infected with COVID-19." (Doc. 1, ¶ 15). Plaintiff also alleges that "the Stay at Home Orders have caused [it] to have lost the use of its premises for their intended purpose." (*Id.* at ¶ 57).

Under the federal rules, pleading the bare elements of a claim is insufficient—Plaintiff must include some supporting facts. *See Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir.2012). Here, Plaintiff makes conclusory allegations that it has suffered direct physical damage, but the Complaint is devoid of any mention of what physical damage occurred, how the physical damage occurred, when the physical damage occurred, and what needs to be repaired, replaced, or rebuilt. Accordingly, none of Plaintiff's allegations, even if taken as true, state a plausible claim that Plaintiff has suffered a "direct physical loss or damage" as required to trigger coverage under the Policy. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016) ("[I]t is not sufficient to plead that the Plaintiff has suffered damages in the form of 'direct physical damage to its property.'"); *cf. Mears v. Allstate Indem. Co.*, 336 F. Supp. 141, 146 (E.D.N.Y. 2018)).

The phrase "direct physical loss or damage" "must be given its plain meaning." *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (finding no ambiguity in the phrase "direct physical loss or damage" and noting the "phrase is simply not susceptible to more than one meaning by 'reasonably intelligent persons.'"). While Rhode Island courts have not directly addressed this issue, other jurisdictions have held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct,

demonstrable, and physical alteration' of its structure.*" Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co*., 311 F.3d 226, 235 (3d Cir. 2002) (quoting 10A Couch on Ins. § 148:46 (3d. ed. 1998)). If the property can be cleaned and restored to its original function, no covered loss has occurred. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("cleaning is not considered direct physical loss"); *see also Universal Image Prods., Inc. v. Fed. Ins. Co*., 475 F. App'x 569, 573 (6th Cir. 2012) (same). The relevant inquiry is whether the structure continues to function. *Port Auth.,* 311 F.3d at 236. If "[t]he structure continues to function—it has not lost its utility" and the "owner has not suffered a loss." *Id*.

In the context of a lawsuit seeking injunctive relief against an insurer for business income coverage related to COVID-19, Judge Caproni of this Court found that the virus and resulting disease do not cause physical loss or damage. Teleconference, Order to Show Cause at 4-5, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020) (Transcript with oral findings attached hereto as Exhibit I). With regard to COVID-19, Judge Caproni noted: "It damages lungs.  It doesn't damage printing presses." (*Id.* at 4:25-5:4). Additionally, another court recently granted summary disposition in favor of an insurer, finding there was no coverage for the plaintiff's COVID-19 related business income loss, because there was no direct physical loss of or damage to property. *See* Hearing, Motion for Summary Disposition, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB at 20:5-9  (Mich. Cir. Ct. July 1, 2020) ) (Transcript with Oral Findings attached hereto as Exhibit J)  ("Plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the

property. There has to be some tangible, i.e. physical damage to the property.").[6]

Moreover, the Policy only provides coverage for business income and extra expense losses that occur during the "period of restoration," which begins with the "direct physical loss or damage" and ends on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced . . . or (2) The date when business is resumed at a new permanent location." (Policy, Exhibit A, Form CP 00 30 06 07, at p. 9 of 9). Thus, for there to be coverage under the Policy's business income or extra expense coverage, Plaintiff's loss must involve some physical damage to covered property that needs to be repaired, rebuilt, or replaced. As explained by this Court, "the words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (citations omitted); *see also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

Any other reading of the Policy to allow recovery for Plaintiff's Claim would render central contract terms superfluous. Under Rhode Island law, the court should "view the contract in its entirety and give the contractual language its plain, ordinary and usual meaning." *Papudesu v. Med. Malpractice Joint Underwriting Ass'n of R.I.*, 18 A.3d 495, 498 (R.I. 2011) (internal quotation omitted). Further, the court considers an insurance policy "in its entirety and does not establish ambiguity by viewing a word in isolation or by taking a phrase out of context.*" Med. Malpractice Joint Underwriting Ass'n of R.I. v. Charlesgate Nursing Ctr., L.P.*, 115 A.3d 998,

---

[6] Plaintiff attempts to argue that COVID-19 caused loss of use, which is somehow "direct physical loss or damage." Such creative interpretations fail. (*See* Exhibit J at 20) ("[P]laintiff is saying that the physical requirement is met because people were physically restricted from dine-in services. But, that argument is just simply nonsense . . . it comes nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property).

1002 (R.I. 2015). Courts shall "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1083 (R.I. 2010).

Thus, under the plain language of the Policy, coverage is only afforded for business income and extra expense losses, if those losses are caused by direct physical loss or damage. Here, Plaintiff's Claim is solely economic in nature and does not relate to any sort of physical damage, and, therefore, is not covered under the Policy. *See Me. Woods Pellet Co. v. W. World Ins. Co.*, No. 1:17-CV-00446-JCN, 2020 WL 3404728, at *4 (D. Me. June 19, 2020) ("[U]nder the policy, [p]laintiff is entitled to recover business income losses only if a covered cause of loss occurs; the existence of a business income loss does not establish that a covered cause of loss occurred."); *see also Bahama Bay II Condo. Ass'n, Inc v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1278 (M.D. Fla. 2019) ("[C]ost of security guards and security fencing . . . is not property damage, or 'physical loss . . .' but is an economic loss. There is nothing in the Policy that covers economic loss."); (Exhibit I, Order to Show Cause at 15 ("[T]his kind of business interruption needs some damage to the property . . . this is just not what's covered under these insurance policies.").

Accordingly, Plaintiff's Complaint fails to allege any facts that trigger coverage under the Policy and its claims fail as a matter of law.

## C.    PLAINTIFF FAILS TO PLEAD A VALID "CIVIL AUTHORITY" CLAIM

The allegations also fail to trigger the Policy's civil authority coverage. Under Rhode Island law, the "insured seeking to establish coverage bears the burden of proving a prima facie case, including . . . the loss as within the policy coverage." *Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing*, 716 A.2d 751, 757 (R.I. 1998). The civil authority coverage requires direct physical loss or damage to property near the insured property and further requires that access to the insured property is prohibited because of that damage. Plaintiff's efforts to obtain civil

authority coverage fail because the Complaint fails to allege (1) such physical damage, and (2) that access to the Property has been prohibited because of such damage.

In the Complaint, Plaintiff alleges "damage due to viruses constitutes physical damage and loss under the Policy, and the Stay at Home Orders have caused [it] to have lost the use of its premises for their intended purpose." (Doc. 1, ¶ 52).[7] Then, Plaintiff alleges the subject government orders "restricted" prohibited access to its Property." (Doc. 1, ¶ 55). However, these orders did not require restaurants to close or prohibit access to their premises. In fact, Governor Raimondo issued an executive order permitting restaurants to sell alcoholic beverages for off-premises consumption, in an effort to facilitate more take-out and delivery business for restaurants. (*See* Exhibit C).

Plaintiff appears to assert that the subject government orders somehow trigger the Policy's coverage extension for civil authority coverage. (*See* Doc. 1, ¶¶ 55, 87, 94). As noted above, the civil authority coverage requires that "Covered Cause of Loss causes damage to property other than property at the described premises." A "Covered Cause of Loss" is defined as "direct physical loss." Accordingly, the first requirement of the civil authority coverage is that there be direct physical loss that causes damage to property other than the insured property. Next, because of that damage to nearby property, a civil authority must prohibit access to the insured property. The action of the civil authority must also be "taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Policy, Exhibit A, Form CP 00 30 06 07, at p. 2 of 9). In other words, the civil authority must prohibit access to the insured location because the nearby property damage has created a dangerous condition, and that dangerous condition was caused by direct physical loss that causes damage to

---

[7] Plaintiff's allegation that "damage due to viruses constitutes physical damage and loss under the Policy" is completely conclusory and is asserted without any supporting factual allegations.

the other property. Plaintiff fails to allege facts to establish these necessary elements.

The plain language of the Policy makes clear that the coverage requires damage to property other than the described premises *and* an order of civil authority that, because of such damage, prohibits access to the insured's property. *See, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."). As explained above, COVID-19 does not cause physical damage or loss to property, and thus, Plaintiff cannot satisfy the civil authority coverage extension's conditions. Even looking beyond that shortcoming, there are two more reasons why Plaintiff cannot fulfill the conditions of the civil authority coverage extension: (1) access to the Property has not been "prohibited;" and (2) the subject government orders were not taken "in response" to damaged property.

First, Plaintiff admits that government orders did not prohibit access to its premises and that it suspended operations voluntarily "to mitigate further losses." (Doc. 1, ¶ 52). Also, as previously detailed, Plaintiff was never required to cease delivery, take-out, or pick-up services. No government order prevented Plaintiff, or its employees, from entering the Property. Although Rhode Island courts do not appear to have considered the issue, numerous other courts have recognized that government orders that hamper access to insured property—but do not entirely *prohibit* it— are insufficient to trigger civil authority coverage. *See, e.g.*, *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (upholding denial of hotel operators' business income claim when customers cancelled visits due to order grounding flights after the 9/11 attacks); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007) (holding that civil

14

authority was not triggered by government order prior to Hurricane Katrina advising residents to stay off the streets because advisories did not "prohibit access" to the insured premises); *54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) (holding that civil authority extension did not apply to insured's business income claim due to city government's diversion of traffic in the proximity of its restaurant, because access to the restaurant was not denied). Since the civil authority extension requires Plaintiff to show that access to its Property was "prohibited" by civil authority, and Plaintiff did not make any such allegations (nor indeed could it), the civil authority coverage does not apply.

Second, the subject government orders were not issued "in response" to physical damage to nearby property. Rather, the orders were issued as precautionary measures to prevent the further spread of COVID-19. In such situations, the civil authority extension is not triggered. *See Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995). In *Syufy*, after the Rodney King verdict and subsequent riots, three cities imposed dawn-to-dusk curfews. *Id.* at *1. An insured movie theater operator, who ran theaters in all three cities, brought a business interruption claim because it closed its theaters during these curfew periods. *Id.* The court concluded there was no civil authority coverage because not only did the civil orders not specifically prohibit individuals from entering the theaters, but the "requisite causal link between damage to adjacent property and denial of access to a Syufy theater [was] absent." *Id.* at *2. In other words, Syufy had closed its theaters as a "direct result of the city-wide curfews," not as a result of adjacent property damage. Furthermore, the court noted that even though the curfews were imposed to "prevent" property damage, they were not the result of the damage itself. *Id.* at *2. Other courts have reached similar conclusions. *See United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) (holding civil authority coverage did not apply to

15

airport's business interruption claim arising from order grounding flights and barring access to airport after 9/11 because the order was "to prevent further attacks and as a matter of national security," not because of damage to the Pentagon); *City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at \*4 (N.D. Ill. Mar. 18, 2004) ("The business interruption . . . was due to the ground stop order imposed by the FAA in order to prevent further terrorist attacks.").

Plaintiff cannot establish that physical damage occurred due to COVID-19, nor can it establish that the government orders prohibited access to the Property. Moreover, these government orders were not taken "in response" to covered physical damage, but were instead preventative measures issued for public health purposes. Accordingly, the Policy's civil authority coverage extension is not triggered.

### D.   COVERAGE IS BARRED BY THE BIOLOGICAL EXCLUSION

The Complaint must be dismissed because Plaintiff's Claim is excluded from coverage by the plain language of the Policy. When resolving insurance coverage disputes, courts routinely dismiss complaints when a plaintiff's "allegations are not reasonably susceptible of an interpretation that would state a claim covered under the Policy." *Netwon Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020). Here, even if Plaintiff could demonstrate a claim within the Policy's coverage grants (which it cannot), coverage nonetheless is excluded for losses arising out of "pathogenic biological material," which includes viruses. Specifically, the Biological Exclusion provides:

> Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, this Policy excludes absolutely any loss, damage, cost, claim, expense, sum or other obligation of any kind or description directly or indirectly caused by, contributed to, resulting from, or arising out of in connection with any ***pathogenic*** or poisonous chemical or ***biological material***, or nuclear explosion, pollution or contamination, regardless of any other cause or event that contributes concurrently or in any sequence thereto.
> The Policy also excludes absolutely any loss, damage, cost, claim, expense, sum or

other obligation of any kind or description directly or indirectly caused by, contributed to, resulting from, or arising out of or in connection with ***any action taken to control, prevent, suppress, remove, dispose, abate, clean-up, decontaminate, retaliate, or respond to any pathogenic*** or poisonous chemical or ***biological material***, or nuclear explosion, pollution or contamination.

(Policy, Exhibit A, Form 2001 AML) (emphasis added). SARS-CoV-2 is the virus that causes COVID-19, from which Plaintiff's Claim arises, as alleged in the Complaint. SARS-CoV-2 is a "pathogenic" "biological material" and Plaintiff's Claim is excluded.

When a policy exclusion is plain and enforceable, it must be enforced as written. *See Emp'rs Mut. Cas. Co. v. Pires*, 723 A.2d 295, 299 (R.I. 1999) ("[A]bsent any ambiguity in the policy's language, we will apply the exclusion as written, unless doing so would render illusory the coverage provided."). Under Rhode Island law, courts "often have looked to dictionary definitions when determining a word's ordinary meaning." *Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1084 (R.I. 2010).

The Policy explicitly excludes coverage for "absolutely any loss" caused "directly or indirectly" by or "arising out of . . . pathogenic . . . biological materials." (Policy, Exhibit A, Form 2001 AML). First, there can be no question that SARS-CoV-2, which causes COVID-19, is a virus—Plaintiff concedes this fact in its Complaint. (Doc. 1, ¶ 5 ("Although the *virus* and related illness are distinct . . . Plaintiff refers to both interchangeably as 'COVID-19'") (emphasis added).[8] As SARS-CoV-2 is a virus, it is also a "biological material." *See, e.g., Nat'l Cotton Council of Am.*

---

[8] To be sure, COVID-19 is a disease caused by SARS-CoV-2, which is a virus by any definition. Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020). This Court considers secondary sources at the motion to dismiss stage when these sources reflect information relied upon by the plaintiff to frame the complaint or facts of which judicial notice may be taken. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) Generally, federal courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings in conjunction with a Rule 12(b)(6) motion." *Matter of Schnittger*, 431 F. Supp. 2d 109, 113 (E.D.N.Y. 2019). Plaintiff has referenced numerous such sources in its Complaint. (*See* Doc. 1). The Court should exercise its discretion in this instance to best determine whether Plaintiff has adequately stated a claim for which relief can be granted.

*v. U.S. E.P.A.*, 553 F.3d 927, 938 (6th Cir. 2009) (citing http://www.epa.gov/pesticides/glossary defining viruses as "biological materials").[9] Further, both dictionary definition and Plaintiff's own allegations support that SARS-CoV-2 is "pathogenic." (Doc. 1, ¶ 38 (describing aerosol particles, such as the ones Plaintiff alleges that SARS-CoV-2 spreads through, as a "pathogenic aerosol cloud").[10] Plaintiff's Claim was a result of "COVID-19 and the resulting response by state and local governments." (Doc. 1, ¶ 3). Accordingly, the Claim as alleged is directly or indirectly caused by, or is related in any way to, pathogenic biological material, and is excluded from coverage under the Policy.

### E.    COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION

In addition, the Policy contains a Microorganism Exclusion, which also excludes coverage for Plaintiff's alleged losses. The Microorganism Exclusion provides:

> This policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:
>> mold, mildew, fungus, spores or other micro-organisms of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.
>
> This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.
>
> This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part for these matters.

(Policy, Exhibit A, Form LMA 5018). As set forth below, SARS-CoV-2, which causes COVID-19, is a microorganism. Therefore, the plain language of this exclusion bars Plaintiff's Claim,

---

[9] *See also Biological Agents*, OSHA (last accessed July 17, 2020), https://www.osha.gov/SLTC/biologicalagents/ (including COVID-19, Avian Flu, and SARS on a list of biological agents).
[10] *See Pathogen*, MERRIAM-WEBSTER (last accessed July 17, 2020), https://www.merriam-webster.com/dictionary/pathogen (defining "pathogen" as "a specific causative agent (such as bacterium or virus) of disease").

which directly or indirectly arises from SARS-CoV-2. Rhode Island law requires that the Microorganism Exclusion be applied as written. *See Pires*, 723 A.2d at 299. Stated differently, when interpreting policy terms, courts must "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1083 (R.I. 2010).

Only two jurisdictions have substantively addressed similar microorganism exclusions, and both found the exclusion to be enforceable. *See Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (holding that the district court correctly applied the microorganism exclusion to plaintiff's claim); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019) ("[T]he Microorganism Exclusion bars coverage for the claims in this case"). In *Creagh*, the insured's claim arose after a tenant of its building died and the decomposition of the tenant's body damaged his apartment unit. *Creagh*, 563 F. App'x at 209. The Eastern District of Pennsylvania held that the subject microorganism exclusion applied because the fluids that escaped the tenant's body and contaminated the unit contained bacteria, which are microorganisms. *See Certain Underwriters at Lloyd's London v. Creagh*, No. 12-571, 2013 WL 3213345, at *3 (E.D. Pa. June 26, 2013). The Third Circuit upheld the decision on appeal. *Creagh*, 563 F. App'x at 211.

A Florida circuit court similarly recognized the unambiguous nature and enforceability of microorganism exclusions in the *Houligan's* case. In *Houligan's*, an insured's building was flooded with sewage and waste following a hurricane. *Houligan's*, 2019 WL 5611557, at *1. In applying the microorganism exclusion to the plaintiff's claim, the *Houligan's* court stated:

> For better or worse, the parties bargained for an insurance policy that contains an extremely broad Microorganism Exclusion, one which supersedes and replaces any

> language in the Policy that might otherwise provide coverage for the loss in question. As noted, the exclusion applies even in the presence of an insured peril or cause that contributes concurrently to the insureds' loss. This Court must apply the Policy in a manner consistent with its plain language. Doing so leads the Court to conclude that the Microorganism Exclusion bars coverage for the claims in this case.

*Id.* at *11. Significantly, the *Houligan's* court looked to the Center for Disease Control's website and dictionary definitions to find that E. Coli and enterococcus, both of which were present in the sewage and waster, are bacteria, and thus, microorganisms that cause an actual or potential threat to human health. *Id.* The decision in *Houligan's* provides a legal roadmap for this Court because SARS-CoV-2 is a microorganism that poses an actual or potential threat to human health, and any claim arising out of SARS-CoV-2, regardless of whether physical damage occurred or whether there is some other contributing or concurrent cause, is therefore excluded from coverage.

Secondary sources, like those relied upon by the *Houligan's* court, support a determination that SARS-CoV-2 is a microorganism. No less than the foremost U.S. governmental authorities in the fight against COVID-19—the U.S. Department of Health and Human Services, National Institutes of Health and National Institute of Allergy and Infectious Diseases—defined microorganism as "microscopic organisms, including bacteria, viruses, fungi, plants, and animals."[11] This is consistent with the findings of other governmental agencies.[12] Adding additional support, scientific journals and textbooks also state that viruses are microorganisms.[13] Even non-scientific sources such as Encyclopedia Britannica, for instance, lists the following

---

[11]  *Understanding Microbes in Sickness and in Health*, U.S. DEP'T OF HEALTH & HUMAN SERVS., NAT'L INST. OF HEALTH 47 (Jan. 2006) (Attached hereto as Exhibit K).

[12]  *What is a Microorganism?* NAT'L PARK SERV., U.S. DEP'T OF INTERIOR, 2 (April 2014), https://www.nps.gov/common/uploads/teachers/lessonplans/What%20is%20a%20Microorganism%20Activity%20 Guide2.pdf (listing viruses as one of the five categories of microorganisms).

[13]  *See, e.g.*, Wendy Keenleyside, MICROBIOLOGY: CANADIAN EDITION, § 1.3 (June 23, 2019) ("Viruses are acellular microorganisms."); Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004) ("Viruses are microorganisms").

"major groups of microorganism": bacteria, archaea, fungi, algae, protozoa, and viruses.[14]

As a result, the Microorganism Exclusion unambiguously excludes coverage for the Plaintiff's Claim.

### F.   COUNTS II, IV, VI, AND VII FAIL TO ALLEGE VALID BREACH OF CONTRACT CLAIMS

Plaintiff has not stated valid claims for breach of contract. To sufficiently plead a claim for breach of contract under Rhode Island law, a plaintiff "must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). While Plaintiff's 125-paragraph Complaint sets forth an expansive background facts section, it fails to allege specific facts supporting its claims of breach in Counts II, IV, VI, and VII.

Plaintiff alleges that Underwriters "have denied claims" for their alleged losses "in breach of the polic[y]" and conclusory allege that their alleged losses trigger the Policy's business income, civil authority, and extra expense coverages, and the Policy's sue and labor clause. (Doc. 1, ¶¶ 79, 82, 94, 96, 108, 110, 122, 124). However, Plaintiff fails to include necessary factual information to support these claims *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194–95 (1st Cir. 1996) ("Conclusory statements that 'Hasbro and its executives failed to meet their contractual requirement,' are insufficient to satisfy the pleading requirements"); *see also Timber Pines Plaza*, 2016 WL 8943313, at *2 ("To be clear, it is not sufficient under *Iqbal* to merely plead that the Defendant breached the Policy by failing to pay the benefits owed under the Policy."). Moreover, even if Plaintiff's allegations are considered true, Underwriters have not breached the Policy

---

[14]   *See Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA (last visited May 6, 2020), https://www.britannica.com/science/microbiology/Types-of-microorganisms.

because there is no coverage for Plaintiff's Claims. Accordingly, Plaintiff has failed to sufficiently plead that coverage is provided by the Policy, as the express language of the Policy expressly contradicts Plaintiff's allegations that its loss is covered under the Policy. *Cf. Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020).

Furthermore, with regards to Plaintiff's "Sue and Labor" claim, it is well-settled that "Sue and Labor" clauses only provide coverage when the insurer would be required to pay under the policy terms. *See Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.,* 321 F. Supp. 2d 209, 220 (D. Mass. 2004); *see also Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 489 (5th Cir. 1960) ("If the underwriter would not be liable . . . there would be no contractual obligation to repay sue and labor."). The Policy's Sue and Labor clauses specifically state that Underwriters "will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss." (Policy, Exhibit A, Form CP 00 30 06 07, p. 5 of 9). For the reasons set forth above, there is no covered loss under the Policy, and thus, the Sue and Labor provision is not triggered.

Accordingly Counts II, IV, VI, and VII. for breach of contract must be dismissed.

## V.    **CONCLUSION**

Plaintiff has failed to satisfy its burden to plead facts that would give rise to a covered claim. Additionally, Plaintiff cannot allege facts that sufficiently demonstrate it has suffered direct physical loss of or damage to their Property. Even if Plaintiff could allege a covered cause of loss, its claim is unambiguously excluded under the Policy's Biological and Microorganism Exclusions. Thus, for the foregoing reasons, Underwriters respectfully request the Court dismiss Plaintiff's Complaint.

Respectfully submitted this 28th day of July, 2020.

*Peter J. Fazio*
_____

BY:  Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN &
DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy No. XSZ146282
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

To: All Parties VIA ECF

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2020, the foregoing Memorandum of Law in Support of the Motion to Dismiss was electronically filed with the Clerk of Court, United States District Court for the Southern District of New York and said Memorandum of Law shall be deemed served by electronic notification of the Court's CM/ECF system as copy was served via e-mail upon the following:

Darren T. Kaplan
**KAPLAN GORE LLP**
1359 Broadway
Suite 2001
New York, New York 10018

John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
**MILLER SCHIRGER LLC**
4520 Main Street
Suite 1570
Kansas City, Missouri 64111

Patrick J. Stueve
Bradley T. Wilders
Curtis Shank
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road
Suite 200
Kansas City, Missouri 64112

J. Kent Emison
**LANGDON & EMISON LLC**
911 Main Street
Lexington, Missouri 64067
Houston, Texas 77064

Richard F. Lombardo
Dawn M. Parsons
**SHAFFER LOMBARDO SHURIN, P.C.**
2001 Wynadotte Street
Kansas City, Missouri 64108