| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: |

632 METACOM, INC. d/b/a HOMETOWN TAVERN, *individually and on behalf of all others similarly situated*,

                    Plaintiff,

                  v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. XSZ146282,

                    Defendants.

No. 20-CV-3905 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff 632 Metacom, Inc. d/b/a Hometown Tavern brought this putative class action against Defendants Certain Underwriters at Lloyds's, London Subscribing to Policy No. XSZ146282 alleging breach of contract and seeking a declaratory judgment that its commercial insurance policy covers certain losses related to COVID-19. Now before the Court is Defendants' motion to transfer the action to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is granted.

## BACKGROUND

Except where otherwise noted, the following facts are drawn from Plaintiff's complaint and are assumed to be true for purposes of resolving the motion. *See, e.g., Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 353 (S.D.N.Y. 2014). The Court also considers certain other materials outside of the pleadings, as is permitted in deciding a § 1404(a) motion. *See, e.g.*, *Factors Etc.,*

*Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds*, *Pirone v. MacMillan*, *Inc.*, 894 F.2d 579 (2d Cir. 1990).

Plaintiff 632 Metacom, Inc. is a Rhode Island corporation that owns and operates Hometown Tavern, a bar and restaurant in Warren, Rhode Island. Compl. ¶¶ 2, 24. Defendants Certain Underwriters at Lloyds's, London Subscribing to Policy No. XSZ146282 ("Defendants" or "Underwriters") are insurance underwriters "that participate in the insurance market known as Lloyd's of London." *Id.* ¶ 25. "Underwriters are composed of separate syndicates, each of which contain one or more foreign insurers organized under the laws of the United Kingdom with their principal place of business in London, England." Dkt. 31, Affirmation of Peter J. Fazio, Esq. in Support of Underwriters' Motion to Transfer Venue ("Fazio Affirmation") ¶ 2; *see also* Compl. ¶ 25 ("Defendants are composed of separate syndicates consisting of incorporated and unincorporated persons or entities that are formed to jointly price and underwrite risk, each of which is identified only by syndicate number.").

This lawsuit concerns the scope of a commercial property insurance policy (the "Policy") that Plaintiff purchased "from Defendants." Compl ¶¶ 17-18. The policy provides commercial property coverage for Plaintiff's restaurant located at 632 Metacom Avenue, Warren, Rhode Island, and covers, *inter alia*, loss of business income sustained due to suspension of operations caused by direct physical loss or damage or orders from a "civil authority." *See id.* ¶¶ 54-55, Exhibit A at 7. Pursuant to the Policy, Plaintiff is to notify its insurance broker, Massachusetts-based XS Brokers Insurance Agency, Inc, in the event of a claim. *See id.,* Exhibit A at 7; Opp. at 10. The Policy specifies that the insurance coverage "shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit clause contained herein." Compl., Exhibit at 4. That clause provides that service

of process in any suit instituted against any one of the Underwriters upon the Policy "may be made upon Messrs Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829, U.S.A." *Id.* at 2.  In late March 2020, Plaintiff notified Defendants of property loss and business interruption caused by the COVID-19 pandemic, which it maintains is covered by the Policy.  Compl. ¶ 21.  "In response, Defendants requested additional information beyond that required by the Policy and told Plaintiff that it would have to review Plaintiff's Policy to evaluate Plaintiff's claim for coverage." *Id.*

On May 19, 2020, Plaintiff filed a putative class action in the Southern District of New York, alleging, "[u]pon information and belief," that "Defendants have uniformly refused to pay their insureds under their standard policy for losses related to COVID-19."  Compl. ¶ 21.  The putative class includes a nationwide class comprising "[a]ll policyholders of Defendants who made a claim and were denied coverage under one of Defendants' policies due to COVID-19," as well as a Rhode Island subclass, comprising those who purchased such policies in Rhode Island.  Compl. ¶ 60.  According to the Complaint, "[u]pon information and belief, the forms and endorsements used in Plaintiff's Policy are materially the same as those policies held by the members of the proposed class." *Id.* ¶ 18.  Plaintiff maintains that venue is proper in this Court "because the Policy specifically provides that service of process may be made upon an agent domiciled in the Southern District of New York." *Id.* ¶ 27.

This Court accepted the case as related to *Gio Pizzeria & Bar Hospitality, LLC et al v. Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers ARP-74910-20 and ARP-75209-20,* a putative class action filed on April 17, 2020 against Defendants by two Florida restaurants alleging breach of contract under a substantially similar policy. *See* No. 20-cv-3107.

3

On August 20, 2020, that case was transferred to the Southern District of Florida by a stipulation that followed Defendants' filing of a motion to transfer venue. *See* No. 20-cv-3107, Dkt. 19.

On July 28, 2020, alongside a motion to dismiss for failure to state claim, Dkt. 33, Defendants filed the instant motion to transfer pursuant to 28 U.S.C. § 1404(a), Dkt. 30. Maintaining that the connection between the Southern District of New York and this dispute is "nonexistent," Defendants argue that the Court should transfer this action to the District of Rhode Island for the convenience of parties and witnesses and in the interest of justice. Mot. at 1. Plaintiff defends the propriety of venue in this District on the grounds that the class-action nature of the suit renders Plaintiff's connection to Rhode Island immaterial and "for all intents and purposes, it appears that Defendants' headquarters are located [in New York]" because Lloyd's of London ("Lloyd's") has offices in this District. Opp. at 1. Defendants counter that Lloyd's of London is an insurance marketplace that is not a defendant in this action, and that "Plaintiff's allegations regarding the location of any Lloyd's office are irrelevant." Reply at 2. The Court held an initial status conference on November 6, 2020 and stayed discovery pending resolution of Defendants' motions.

## LEGAL STANDARD

A court may transfer a civil action to any other district where the suit may have been initially brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The party requesting a change of venue carries the "burden of making out a strong case for transfer." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks omitted).

To decide whether transfer under § 1404(a) is warranted, Courts undertake a two-step inquiry. *See, e.g., Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401,

407 (S.D.N.Y. 2017). The Court determines "first, whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (internal quotation marks omitted).

"District courts have broad discretion in making determinations of convenience under § 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006). Some of the factors the Court should consider are "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Everlast,* 928 F. Supp. 2d at 743. The convenience of the witnesses and the locus of the operative facts of the case are typically regarded as the primary factors. *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014).

## DISCUSSION

### I. This Action May Have Been Brought in the District of Rhode Island

As an initial matter, it is plain—and Plaintiff does not appear to dispute—that this action could have been brought in the District of Rhode Island. First, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Those criteria are satisfied in this case as Plaintiff is a Rhode Island business that is seeking insurance coverage for lost income that is largely attributable to stay-at-home orders issued

by the state of Rhode Island. *See, e.g.,* Compl. ¶ 14 ("The Rhode Island Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business."). Second, Defendants, by virtue of their status as foreign insurers, "may be sued in any judicial district." 28 U.S.C. § 1391(b)(2). The Court therefore finds that Plaintiff could have commenced this action in the transferee district.

## II. Discretionary Factors Favor Transferring this Case

Having determined that this action could have been brought in the District of Rhode Island, the Court turns to the discretionary inquiry as to whether transfer would best serve the convenience of the parties and the interests of justice.

### A. Plaintiff's Choice of Forum Is Afforded Little Weight

Because the "operative facts upon which the litigation was brought bear little material connection" to the Southern District of New York, the Court affords little weight to Plaintiff's choice of forum. *Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 270 (S.D.N.Y. 2001) (holding that court should give plaintiff's choice of forum "substantially less deference" under those circumstances); *see also Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (stating that where "the locus of operative facts lay elsewhere, plaintiff's choice of forum is entitled to little deference" (internal quotation marks omitted)). Plaintiff chose to bring this action in New York, even though its claims against Underwriters lack any obvious connection to the District. Plaintiff is a Rhode Island business who used a Massachusetts broker to purchase an insurance policy underwritten by a United-Kingdom-based syndicate. The merits of this lawsuit turn on whether Plaintiff's losses, which occurred in Rhode Island, are covered under the Policy, and whether the losses of similarly situated policyholders are covered under similar policies.

The Court does not credit Plaintiff's argument that the connection between New York and this litigation is "substantial." Mot. at 3. To support that contention, Plaintiff avers that a "Google search reveals that Lloyd's American headquarters are located" in a Manhattan office that houses Lloyd's' American President and General Counsel. Mot. at 3. Defendants counter that Lloyd's is neither a defendant in this action nor a party to the Policy, but rather an insurance market in which Underwriters operate. Reply at 2. The Court notes that Defendants' characterization of Lloyd's of London is consistent with past precedent. *See, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1357 (2d Cir. 1993) ("Lloyd's is not a company; it is a market somewhat analogous to the New York Stock Exchange."); *Higgins v. Amazon.Com, Inc.*, No. 02CIV.1604RMBFM, 2002 WL 31760237 (S.D.N.Y. Dec. 9, 2002) (entitling "little, if any weight," to selection by Lloyd's underwriter of SDNY as forum that had "no real nexus" to the suit). Indeed, the Complaint itself describes Defendants as underwriters "that participate in the insurance market known as Lloyd's of London." Compl. ¶ 25. The fact that the insurance market in which Underwriters participate has an office in New York does not suffice to establish a cognizable connection between this litigation and the Southern District of New York. Accordingly, the Court affords Plaintiff's choice of forum little to no weight in its § 1404(a) analysis.

  **B.**  **The Locus of Operative Facts**

The Court finds that this important factor weighs in favor of transfer to Rhode Island. Where, as here, "a party has not shown that any of the operative facts arose in the Southern District of New York," the locus of operative facts will "substantially favor transfer from this district." *Cushman & Wakefield of Pa., Inc.*, No. 12-CV-9224 (JPO), 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (internal quotation marks and alteration omitted). In such instances, "the interests

7

of justice tend to be best served by transfer to a district where the key operative events occurred." *Id.* (internal quotation marks omitted).

"When assessing the locus of operative facts in insurance coverage disputes, courts typically emphasize the site of negotiations, purchase, and delivery of the policy in question." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 396. Although the Complaint does not allege where the Policy was negotiated or purchased, it does allege that the Policy was issued to Plaintiff at an address in Rhode Island. Compl. ¶ 44. Nothing in the record suggests that any relevant events concerning the Policy took place in New York.

Plaintiff maintains, however, that its filing of this suit as a nationwide class action changes the inquiry. Noting that "putative class members are spread all over the country," Plaintiff argues that the primary locus should be determined by Defendants' headquarters. Opp. at 5. As discussed above, however, Defendants—to be distinguished from Lloyd's—are headquartered in the United Kingdom, *see* Fazio Affirmation ¶ 2, and lack any cognizable connection to New York. A focus on their headquarters is therefore immaterial to the determination of which judicial district constitutes the locus of operative facts. Because all of the identified "operative documents and sources of proof" concern conduct in Rhode Island—namely the Policy and its applicability to the putative losses that took place in Rhode Island as a result of stay-at-home orders promulgated in that state—the Court concludes that the locus of operative facts is in Rhode Island. *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 503 (S.D.N.Y. 2006). Accordingly, this factor favors Defendants.

### C. The Convenience of Witnesses

Consideration of the convenience of witnesses similarly favors transfer to Rhode Island. While nearly all of the identifiable potential witnesses are located in Rhode Island, none are in New York. Underwriters aver that the employees at Plaintiff's Rhode Island restaurant, who presumably live in the vicinity of that state, may be called as witnesses. The Court agrees with Defendants that Plaintiff's "testimony regarding the basis for its claim" may be crucial for the adjudication of this action, and that Plaintiff's employees may possess facts as to whether the restaurant's specific losses fall within the terms of the Policy's coverage. *See* Mot at 6; Reply at 5. Defendants also plausibly argue that Plaintiff's Massachusetts-based insurance broker may be able to give relevant testimony regarding the notice of claim that gave rise to this suit. The Court thus finds that Defendants have met their burden as movant to "clearly specify the key witnesses to be called" and to make "a general statement of what their testimony will cover." *Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F. Supp. 3d 421, 437 (S.D.N.Y. 2018).

Were this case to proceed to class certification, it is possible that fact witnesses would be located across the country. As Defendants' key witnesses are likely located within the United Kingdom, their convenience does not factor into the analysis. Although international air travel to New York is likely more convenient than to Rhode Island, Defendants evidently would prefer to litigate in Rhode Island. Accordingly, this factor favors transfer, but not strongly.

### D. The Convenience of Parties

This factor is neutral. As Defendants are based in the United Kingdom, the location of the forum within the United States would have little effect on their convenience. The only connection that Plaintiff appears to have with this district is the location of its counsel, which is not relevant to the convenience inquiry. *See Starr Indem.,* 324 F. Supp. 3d at 437. Nor is the possibility that

9

any New York policyholders may join this putative class action. *See id*. at 502 n.6 ("We cannot speculate as to who may or may not join plaintiffs' action. Absent joinder of the alleged New York parties, we decline to consider them herein."). Although Plaintiff has sought to litigate this action in New York, it is difficult to see how transferring the case to its home state would create any inconvenience here.

E. **Familiarity with Governing Law**

This factor weighs slightly in favor of transfer. Generally, "a case . . . should be tried in a forum at home with the governing law." *Viacom Int'l v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). However, "the forum's familiarity with governing law is a factor that is generally given little weight." *Freeplay Music, LLC v. Gibson Brands, Inc.,* 195 F. Supp. 3d 613, 620 (S.D.N.Y. 2016).

In this putative class action, Plaintiff points out that the Court may be required to apply the laws of each state in which a class member resides. That may be true. At this pre-certification stage of the litigation, however, the Court must apply Rhode Island law to determine whether Plaintiff has stated a claim under the Policy. Plaintiff does not dispute that Rhode Island law governs the interpretation of its Policy, and that that Policy will govern the pending motion to dismiss on which the viability of this class litigation depends. As a result, the Court agrees that a Rhode Island court is better suited to interpret the Policy's language under Rhode Island law.

F. **Trial Efficiency & the Interest of Justice**

"Trial efficiency and the interest of justice are important factors in a § 1404(a) transfer analysis, and may be determinative in a particular case." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 397. For largely the reasons described above, the Court determines that these factors favor transfer.

The Southern District of New York has no tangible connection to this dispute. All of the identifiable witnesses and documents are either located in or around Rhode Island or outside the United States. The dispositive motion before the Court depends upon construction of Rhode Island law. Moreover, that this case is at an early stage and discovery has yet to commence weighs in favor of transfer. *See Starr Indem. & Liab. Co.*, 324 F. Supp. 3d at 441. The Court also notes that the case to which this action was accepted as related was transferred to Florida, where the plaintiffs are located.

### G. Remaining Factors

The remaining factors—availability of process to compel the attendance of unwilling witnesses, the location of relevant documents, and the relative means of the parties—do not strongly weigh one way or another. Although a federal court may command a person to attend a trial, hearing, or deposition only within 100 miles of where that person resides, is employed, or regularly transacts business, Fed. R. Civ. P. 45(c)(1), and Defendants aver that the Plaintiff's Massachusetts-based insurance broker may be compelled to provide evidence, "the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists." *Starr Indem. & Liab. Co.*, 324 F. Supp. 3d at 440. The location of documents likewise "assumes much less importance than it did" before the "era of electronic documents." *Id.* at 441. Lastly, the relative means of the parties have little bearing on the propriety of transfer to Plaintiff's home state.

### H. Balancing of the Factors

In sum, all relevant factors demonstrate that transferring this action to the District of Rhode Island would promote convenience and the interests of justice. Because most witnesses and evidence appear closer to the transferee venue "with few or no convenience factors favoring the

11

venue chosen by the plaintiff, the trial court should grant a motion to transfer." *NetSoc, LLC v. LinkedIn Corp.,* No. 18-CV-12215 (RA), 2020 WL 209864, at *7 (S.D.N.Y. Jan. 14, 2020). Although this is a putative nationwide class action, the balance of factors at this stage of the case favors transfer to the home district of the lead Plaintiff.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to transfer the action to the United States District Court for the District of Rhode Island is GRANTED.

SO ORDERED.

Dated:   February 4, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge